May I please the Court, Your Honor. Ken Laborde, representing the appellant, Apical Industries. Your Honor, you may be familiar with the background, but I think a certain refresher on the background here would be very helpful for the Court's understanding of our position. Back in 2011, a P H I helicopter is flying over the Gulf of Mexico. There's an engine failure. The pilot activates the emergency flotation devices manufactured by my client, makes a landing on the Gulf. The pilot and passenger successfully egress the helicopter, and then the work boat in the Gulf starts towing the helicopter around. Ultimately, it leans over and is capsized. P H I files their suit initially in Louisiana State Court. We remove it. The suit is against Rolls-Royce as the manufacturer of the engine and Apical as the manufacturer of the floats, as well as OHS, who is an overhaul facility for the floats. Redhibition claim against Rolls-Royce, redhibition claim against Apical, breach of contract claim as against OHS. Shortly after the removal, defendant Rolls-Royce files a motion to sever and transfer the case to India. We really do have all that background. We've read the brief, so would you move into your first legal point? I certainly will, Your Honor. In October 26, Magistrate Judge Hanna granted a de facto motion for summary judgment, sua sponte, without any request for relief from P H I. In that motion, we basically granted summary judgment as to the defenses of Apical. Basically, Judge Hanna said, I don't see any way that Rolls-Royce, as the manufacturer of the engine, could ever be responsible for the failure of the floats and the inversion of the helicopter once the helicopter was safely on the water. We believe, Your Honor, number one, that was clearly a fact question for the jury to determine, which is intervening cause. Is it intervening cause? Is it superseding intervening cause? Of course, we have cited to the court cases that say in a redhibition action, causation is an issue for the jury to determine because in a redhibition case, if the redhibitory defect is found to exist, there can only be damages to the extent they were caused by the P H I was seeking to recover the full value of the helicopter in Indiana and had filed motions, Rolls-Royce had filed motions asking the court to dismiss the P H I claim seeking the full value of the helicopter. And the Indiana court said, no, we're not going to grant that motion because P H I has a claim for the defect to the engine, as opposed to a defect to the bearing that and therefore the limited warranty on that contained the consequential damages limitation on which Rolls-Royce was relying in his summary judgment, the court said that doesn't apply to the engine defect and therefore we're going to let P H I pursue the full recovery of the helicopter in the Indiana court. And then the court in Indiana also said, we believe the question of intervening cause because Rolls-Royce asked the court to rule that P H I couldn't recover for the full value of the helicopter because the failure of the float was a superseding of any cause. And the Indiana court said rightly, no, this is a jury question for the jury to determine whether or not there was superseding of any cause. Now when we come to the Louisiana litigation, that case settled. Yes, your honor, that's exactly correct. And thereby that went away. Now we're in Louisiana and P H I is again seeking the full value of the helicopter. So they're seeking the full value in Indiana and the full value of the helicopter in Louisiana. So essentially they're trying to get a double recovery. Don't know what they received by way of settlement in Indiana, but they're trying to get a double recovery. And Louisiana law and the law of solidary obligors is clearly such that under civil code article 1803 and 1804, if you settle with one solidary obligor, the obligation is reduced by the virile shares of two obligors. And so when, when P H I settled with Rolls Royce in Indiana, that automatically resulted in, if, if we were able to show a trial that P H I, uh, that Rolls Royce's engine contained a redhibitory defect that would make Rolls Royce a solidary obligor with my client Apical. And as a exactly what we're arguing judges that judge Hannah, by issuing the suicide de facto ruling on a motion for summary judgment that was never filed, uh, took away that opportunity for us to prove that Rolls Royce was in fact a solidary obligor. You're not seeking comparative responsibility. Absolutely not your honor. Now I, you know, we did in the trial court because we don't believe that that's a settled issue of law in Louisiana. The Supreme court has never said that, but there is case law in Louisiana. And the court found that in the lower court, that comparative fault was not there, but we are not making that argument on appeal. I want to make that clear. That's absolutely correct. We are not suggesting that comparative fault. The way I started my argument just a minute ago was that it's not comparative fault. It's causation. That's the issue. And we've cited to the court, uh, the case law, uh, get it, uh, very rapidly for you because I think it's very instructive of the Louisiana law and the law of rehabilitation. And you've got a statute on that, on the causation that expressly allows sharing of the cost, basically, if there were two rehabilitation. That's right. If there are two rehabilitory defects, those are both contract claims. And if both contract, both parties have their contracts, uh, and that results in the same item of damages, namely the loss of the helicopter, then both entities that breach their contracts are liable for the same item of damages. And that's where article 1804 comes in and says, uh, 1803 and 1804 says that the coextensiveness of the obligation is what creates the solidary obligation, not the nature of the claim. How does the, uh, limited warranty, how does the limited warranty affect that? The limited warranty here, and that's where I was going originally, the limited warranty was a comp, the limited warranty accompanied the bearing that was sold as a spare part by Rolls-Royce to PHI to be put as a spare part into the engine. And that spare part warranty said that there's a limitation of consequential damages, right? So if the argument was the bearing is defective, then the limited warranty is applicable because that warranty accompanied that part. So if there were a retrial on this, PHI would be saying it's all, it's either, either a combination of the bearing and the float. Well, that's what they were arguing. Oh yes, that's right. If there were a new trial, and you all would be arguing it's all the engine, or at least it's half the engine. Well, that at least all, or at least half. Sure, that would be our jury. Or at least some. At least some, that's right. And, and the reason we would do that, and we wouldn't be, again, because there's no comparative fault here in retribution, we wouldn't be arguing that they're 80% at fault and we're only 20% at fault. It would be that they're either 100% at fault or we're solidary obligors and the bureau shares, according to Louisiana civil code articles, are split evenly. Okay. Would you finish your answer to me on the limited warranty? Yes, sir. And so the limited warranty is applicable to any redhibition claim relative to the bearing itself. Once you go beyond that bearing to an argument that the engine of the helicopter contained a redhibitory defect at the time of sale, now you're no longer constrained by the limited warranty and its limitation on consequential damages. You now have just a plain old redhibition claim with regard to the defect. What evidence, what evidence is there that it was not the bearing? Your Honor, we have, as part of the appellate record during the trial, we submitted the deposition testimony of PHI's own expert that they retained to testify in the, in the Indiana case, Gerhard Fuchs, that the engine defect was the cause of the loss and not the bearing failure, not the design defect in the helicopter. And so we have that Gerhard Fuchs testimony is submitted outside the hearing of the jury, of course, and we make reference to it in our, in our pleadings to those, those filings, the deposition testimony. So there's clearly evidence there of that. And that's exactly what PHI was arguing in Indiana to make a recovery for the full value of the helicopter, because they knew if we argue just the bearing was defective, they're going to be constrained by that limited value. So when the Indiana judge denied the motion for summary judgment that, that Rolls-Royce had filed, he was rightly saying, rightly saying, look, there is this other claim for the engine defect that isn't constrained by the limited warranty. And I'm going to let PHI proceed to trial and try and recover the full value of the helicopter. And also he said, I'm not going to grant a summary judgment on superseding cause because that's an issue of fact that the jury's entitled. And so that's when the court denied Rolls-Royce's motions for summary judgment and said, we're going to let this case proceed to trial. And it was only after that, that PHI and Rolls-Royce entered into their settlement. And so now that's why we're in Louisiana. And look, this is the exact same thing. If this case had never been severed and transferred, right? The fifth circuit said, based upon the Atlantic Marine decision from the, from the United States Supreme Court, we think that the private interest factors are, are overwhelmed by the, by the agreement between the parties and we're going to sever this case and send it apart. Had it, had that not happened though, had this limited warranty not existed, citing venue and applicable law, we'd have ended up in the same manner in the court in Lafayette, a redhibition claim against Rolls-Royce, a redhibition claim against APICAL, and the jury would have had to sit there and do the same exact thing we were asking the court to do. And that is decide, is there a redhibitory defect in the engine? Is there a redhibitory defect in the floats? And either one is, is the sole cause or they're both a cause. Or the other one, if the phase, if the jury finds that this, the failure of the floats was a superseding intervening cause, then they would find that APICAL alone was at fault, even if there was a redhibitory defect in the engine. But what the, what the judge did was take away from us that opportunity to present that evidence to the jury, because the evidence would have shown if, and again, we have, part of this is in the record as well, that the vast majority of times, and look, this is not the first time that a helicopter has landed in the water in the Gulf of Mexico after an engine failure, because that's why the pop-up floats exist, are to land the helicopter and allow the people on board to make a safe egress of the helicopter. The FAA doesn't certify the floats for how long they'll keep the helicopter. They only certify them to stay, keep the helicopter upright for a certain short period of time to allow people to get out. And once that's it, the FAA doesn't care what happens to those floats and whether or not you recover your helicopter. And APICAL makes no warranties in that regard. And PHI will tell you that a very small percentage of the helicopters that land in the Gulf of Mexico after an engine failure recover. Most of them turn over at some point because the Gulf is an open environment. Helicopters are not stable things when they're floating in the water. Did you have a limitation on warranty? No, we did not have a limited warranty. Okay, so you could be held responsible for it. Well, we're here for a defense. In other words, you had no defense that you only had to keep the helicopter float long enough for the people to get out. Well, that's the expert that the purpose and the reason for the certification of the floats is to keep it floating long enough. That's the expert testimony that's in the record. Yes, sir. So that's not an issue in the case. Well, no, it's not an issue. But I'm trying to say that's what we would have been arguing is, look, any time a helicopter goes into the water and lands on its floats, the engine manufacturer, after many years, Rolls-Royce has been making engines for helicopters in the Gulf of Mexico for more than 50 years. They are well aware that it is foreseeable that that helicopter will be lost once it's in the water. Floats are no floats. In other words, once you put a helicopter in the water, it's essentially an unstable object and that the chances are it's going to be lost. And so that's why we would have argued to the jury based upon that evidence expert as well as factual because the PHI folks were there to give testimony that the court had allowed it, that once the helicopter in the water, it's likely to turn over and be lost. And therefore, if we had been able to show the jury that the engine manufacturer is the reason that the helicopter ended up in the water, and this is PHI's own expert that would be saying that about Rolls-Royce, then that is Rolls-Royce is already on notice that there is a likelihood and it's foreseeable that the helicopter will turn over. And therefore, that's why we would have argued to the jury if we had been allowed to put on that evidence as to Rolls-Royce, that APICAL is not a responsible party. Even if you find there's a rehabilitory defect there, we were not the cause of that problem. In other words, it was the overriding, overwhelming failure of the engine that put the helicopter in peril in the first place and that our floats are not designed to keep that helicopter afloat for some indefinite period of time to allow recovery. That's nowhere put into any of the information with regard to these floats. So you're honest, what we're asking the court to do is because of this error, because we weren't allowed to put on this evidence as to Rolls-Royce, because of the court's de facto motion for summary judgment, he took away our right to have those issues determined by a jury, and we're asking the court that that error infected the whole liability case, and we're asking the court to vacate the court's judgment as to liability and to send it back for our ability to put on the case as against Rolls-Royce and our ability... Would that be to put on the entire case again? No, sir, your honor. We've only asked the court to vacate the liability portions, not the damages. In other words, we don't believe that the judge's ruling infected the jury finding. But liability as to which parties? As to Rolls-Royce and my client. And that's because the other evidence, the error as to keeping out the information and the cause of the engine failure, it had to clearly infect the jury's causation findings as to my client. In other words, we were the only person there. If there was a redhibitory defect, we had to, you know, we were the cause. That's the only thing they had to go on. They didn't have anything about the engine failure or why it failed or a redhibitory defect in the engine. So that's why we're asking the court to vacate it, send it back just for a trial on liability issues. Was there a defect in the engine? Was there a defect in the floats? Who's caused, what caused this failure to occur? Not as to damages. Thank you, Mr. Laborte. We have time for rebuttal. Yes, sir. Sanfilippo. May it please the court. Good afternoon. Steve Sanfilippo for PHI, Inc. That argument that you heard at the end is exactly what they argued at trial for two days. The party stipulated that the helicopter had to land in the water because of a failure of the engine. The rest of the trial was spent arguing as to whether or not those floats were intended to keep the helicopter upright or whether that was not the intent, and if so, and if there was a redhibitory defect. But the argument that they were prevented from arguing to the jury that it was the engine failure that caused the damages and not the floats, if you look at the record, it's just not supported by the record. Well, but did they, they were, go ahead. I was just going to ask, that's what they argued maybe, but they didn't get to put any evidence on to support that, did they? What the district court held was it was irrelevant why the engine failed, whether or not the floats had a redhibitory defect that caused the helicopter to overturn. All that mattered, all that was relevant was that the engine failed. Why it failed was an extraneous fact that the court said was not admissible and didn't matter. I will tell you that the court excluded that evidence under grounds of both 401 and 403, both relevance and prejudice. But if under Louisiana law, it could have been a redhibition for the, the engine failure could have been, the jury should have been given the question, which, which was the cause, this redhibition, this redhibition, or both? It seems to me if the, if the answer had been both under Louisiana law, they would each been, have to pay half. But is that not comparative fault, which is not? It is not comparative fault. There's a statute that says how you split it. It doesn't, the jury doesn't decide if 20, 80, you know, 30, 70, whatever. That's not comparative fault. Perhaps if, if they had submitted that issue and had pled it, then that would have been a viable question to ask the jury. But the fact of the matter is, we're putting the cart in front of the horse just a little bit. If you look at the pleadings, this solidary obligor issue was not pled. For that reason alone, as this court has held regularly, a court, district courts are only required to submit those material issues raised by the evidence in the pleadings. The issue of whether a party is a solidary obligor is a, an affirmative defense that must be pled. They didn't plead it. I will cite the court to their affirmative defenses, which are in the record on page 282, and they're all comparative fault affirmative defenses. And that is probably best underscored by the jury instructions, the proposed jury instructions they submitted to the court, which is in the record at page 3247 of the record. If you look at the question, the comparative question they submitted, it is to what extent did the fault of each of the following contribute to PHI's claim damages? Express your answer in terms of percentages from 1 to 100 percent, and the percentages cannot be in excess of 100 percent, and Rolls-Royce is listed on there. In a solidary obligor defense, both of them have to be simultaneously liable for 100 percent of the loss. Their, their pleadings did not put PHI or the solidary obligor defense, and for that reason alone, the court couldn't have erred in submitting that defense. We would also argue that a secondary reason why the court didn't err in submitting that defense is the fact that these aren't solidary obligors. Under Louisiana Civil Code Article 1794, to be a solidary obligor, you have to be responsible for the, for the entirety of the loss. Here, in obligation, in fact, this court held in the Threlkeld v. Haskins case, 922 F. 2nd, 265. An obligation is not solidary if the plaintiff suffers two distinct injuries resulting from two different causes. That's exactly what the district court found. The district court found... I don't understand. The loss was the loss of the helicopter, so what's the other loss? But Rolls-Royce did nothing. Apical did or did not do anything to cause the engine failure, right? So the court found Apical is not responsible for the engine failure. They're only responsible for the rest of the helicopter. The flip side of that is Rolls-Royce did or did not fail to do something that caused the helicopter to overturn. The party stipulated to the fact that after the engine failure, the helicopter landed in, in the Gulf. They were able to safely get out. A jury could disagree with that. A jury could find that, in fact, Apical's float was just there to get the people off. It wasn't there to save the helicopter, so the real cause was the fact that the helicopter went down. Once it went down, there was no saving it. Now, the jury could conclude that. The jury absolutely could have concluded that, but the jury just didn't. They weren't asked to. The jury was asked whether or not there was a rehabilitory defect in the floats that caused the damage to the helicopter, and they answered yes. They could have also answered the same question, yes, about Rolls-Royce. But there's no, there was no evidence to support such a question. They weren't allowed to put it on. They weren't allowed to put on evidence that it, that it was Rolls-Royce's fault. And then we get to the exclusion of evidence point where they didn't challenge the exclusion under Rule 403, so the exclusion of the evidence oughtn't be considered as a reason to reverse the judgment on that. Now, assuming, assuming that the jury could have considered whether or not Rolls-Royce was solidarily, was a solidary obligor, the question would be something to the effect of, do you find that Rolls-Royce is responsible for the entirety of the loss? There is no reason if this court reverses, which it shouldn't do, based upon the failure to plead in the fact that we don't believe these are solidary obligations. But let's assume the court finds that it was error not to ask the question as to Rolls-Royce. Under no circumstances should this go back for a retrial of APICAL's reddition liability based upon the fact that they have already had a full chance to argue, a full chance to, to fight as to whether, you're saying if we remand, we should only remand as to the Rolls-Royce piece of it. And y'all, y'all can fuss before a jury as to whether their engine failure was a cause of the total loss of the aircraft. The jury has already found that the floats had a inhibitory defect and that that defect was, was a cause of the entirety of the helicopter loss, right? I would then, I'd take that, I would take that remand any day. But they didn't, they didn't challenge those findings. They're, they wouldn't, you're saying they don't have to. You're saying if we remand, the only thing that needs to be retried is Rolls-Royce. If, if you remand, I think the only thing that goes back is whether or not there was a defect in the Rolls-Royce engine that caused the loss of the entire helicopter. And if the answer is yes, then they get exactly what they're seeking, which is 50%. If you send it back, I don't disagree that that's the, that's the legal outcome of what happens. Okay. Again, I, if you look at, you look at the pleadings, I don't think it's supported. And we were certainly prejudiced by them not, by, by them failing to plead it. We settled the APICAL or the Rolls-Royce case in April, 2017. They didn't, they didn't raise solidary obligor until October, 2017. So had they sought to amend their pleadings, we would have, would have objected on prejudice. There's no argument that it was tried by consent because the object, evidence was objected to and held out. So I think you've got a waiver issue from the pleading standpoint that, that requires that the judgment be affirmed. And with that, that's our argument, unless the court has any further questions for us. Thank you. The board for rebuttal. What do you do with Mr. Sanfilippo's argument regarding the way that the case was, was pled and whether it was, whether it was pled on comparative fault? Yes, sir. I, I responded in response to Judge Owen's statement earlier that during the pendency of the case in the trial court, we were arguing still that comparative fault was applicable in a retribution case. As we said, the Supreme Court has never ruled on that issue. And therefore we were continuing to press that issue in the trial court. And that's why our submissions with regard to the jury instructions and so forth had, were submitted as comparative fault. But you didn't plead solidary obligor. Yes, sir. Right. You did not. I did. Well, Your Honor, let me address that. First of all, the case that they cite is a, is very misleading. It's an asbestosis mesothelioma case. And the defense that was being pled or that the courts that should have been pled was extinguishment, which is separate from that. What, what that case is, is that if you want to argue that you need to plead it and you need to plead extinguishment. Yet the court, if you read the whole opinion, rather than the one quote cited by, by PHI, the court goes on to apply solidary obligor status to all of those without the word solidary obligor ever being used in any of the defenses in that case. In other words, they reduced that by seven eighths or seven zero shares. Now let me read the defenses that we have here when he says it wasn't raised. The defense says, first of all, plaintiff's claims against defendant of Bard in so far as any alleged action was not direct and proximate cause of the damages. So that's, that's our way. That's, that's, and by the way, let me point out, please, that the case they cite is under Louisiana law, which has a different pleading standard than the federal courts. The federal courts, of course, have the notice pleading. And as long as you put on notice and we talk about all this in our brief, that's all that's required. You have to affirmatively the statute, which statute? I don't know the right words under Louisiana law. It says you're started the v. veris libel. You're solidarily. Solidarily libel. Yes. Okay. Yeah. Those statutes, those statutes are 1797 through 1804 civil code articles, uh, are the, are the applicable solidary obligors. But we, to go on, we said the alleged incident made the action, uh, this action of plaintiff's alleged damages were proximately caused by the superseding and intervening negligence and fault of other parties. Now, whether, because we use the word fault, I don't think fault is equal to liability superseding intervening to me being total cutoff of causation so that you're 100% off the hook. It doesn't mean that two causes called the same loss, right? But that's here. We have the same damages. And that's what we're trying to say is that there are two. I think you understand our argument perfectly. Judge Owen. Well, I don't see how superseding and intervening get you there. Oh, well, wait a minute. I've got, I've got more. Okay. An award or judgment rendered in plaintiff's favor must be reduced by the amount equivalent to the collateral benefits or settlement monies paid to on behalf of the plaintiff. And so that's exactly saying, look, that's, that's settlement benefits. Well, that, well, that's right. And that's what we're saying. And then plaintiff's 50%. I'm sorry. Go ahead. Okay. What I'm, what I'm trying to say with regard to the defenses, is that there was notice and we've cited a number of cases that say, look, as long as the plaintiff isn't prejudiced by it, and all of this is well, well, uh, stated in the pretrial order and in the proceedings leading up to the trial order before the trial court, the plaintiffs were not caught by surprise. And what, uh, what, you didn't tell the judge, okay, maybe we don't get comparative negligence issues, but we certainly get an issue on was a cause, a cause. That's right. Because under this statute, we're solidarily liable and we get 50, we should get 50%. That's correct. Absolutely. You didn't make that argument to the trial court is best I can tell. No, we did, Your Honor. First of all, if you look at the judge's ruling, which is very interesting, when we had the pretrial conference, the judge announced for the first time, hey, look, I'm thinking about not letting you put on any evidence of the engine, the reasoning engine failure. But he said, I'm gonna give you seven days to brief it. And if you look at the order, that order saying you've got seven days to brief, it says, do not put anything in there about solidary obligors. Do not. So we were prohibited from addressing the solidary obligor in that matter. And I think that's primarily because the court was already well aware of our contention that Bowles-Royce was a solidary obligor that had been in the pleadings on a number of occasions before and had been discussed with the court for him to say, I don't want to hear anything about solidary obligors in your briefing. And he gave us 10 days to do that. And that was part of this sua sponte motion. And so you object to that? Yes, sir. We did. We did. We said we couldn't. I mean, the court said do not put anything about solidary obligors. But after he granted the motion, we went back and asked for reconsideration and put solidary obligor arguments in the request for reconsideration after the court said, I'm not going to let you put in any information once it ruled. Before trial. Before trial. Yes, ma'am. That was all before trial. This was not a surprise to DHI. Thank you, Mr. Ward. Your time has expired. Your case and all of today's cases are under submission. Court is in recess until 1 o'clock.